**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHAN GARLESKY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> VIA TRANSPORTATION, INC., DANIEL RAMOT, CLARA FAIN, ARNON DINUR, WILLIAM NIX, NOAM OHANA, NECHEMIA PERES, CHARLES H. RIVKIN, SARAH E. SMITH, GOLDMAN SACHS & CO. LLC, MORGAN STANLEY & CO. LLC, ALLEN & COMPANY LLC, WELLS FARGO SECURITIES, LLC, DEUTSCHE BANK SECURITIES INC., GUGGENHEIM SECURITIES, LLC, CITIZENS JMP SECURITIES, LLC, NEEDHAM & COMPANY, LLC, OPPENHEIMER & CO. INC., RAYMOND JAMES & ASSOCIATES, INC., WILLIAM BLAIR & COMPANY, L.L.C., NOMURA SECURITIES INTERNATIONAL, INC., and WR SECURITIES, LLC, <br><br> Defendants. | Civil Action No. 1:26-cv-04870 <br><br> <u>CLASS ACTION</u> <br><br> <u>DEMAND FOR JURY TRIAL</u> |

**COMPLAINT FOR VIOLATIONS OF THE**
**<u>FEDERAL SECURITIES LAWS</u>**

Stephan Garlesky ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes, without limitation: (a) review and analysis of regulatory filings made by Via Transportation, Inc. ("Via" or the "Company"), with the U.S. Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Via; and (c) review of other publicly available information concerning Via.

## I.      NATURE OF THE ACTION AND OVERVIEW

1.      Plaintiff brings this federal class action under §§11, 12, and 15 of the Securities Act of 1933 ("Securities Act") against (i) Via, (ii) certain of the Company's senior executives and directors who signed the Registration Statement, effective September 15, 2025, issued in connection with the Company's initial public offering (the "IPO" or the "Offering"), and the underwriters of the Offering. Plaintiff alleges that the Registration Statement and Prospectus (filed with the SEC on August 15, 2025, and September 15, 2025, respectively) including all amendments thereto (collectively, the "Offering Documents"), contained materially incorrect or misleading statements and/or omitted material information that was required by law to be disclosed. Defendants are each strictly liable for such misstatements and omissions therefrom (subject only to their ability to establish a "due diligence" affirmative defense).

2.      Via is headquartered in New York, New York. The Company claims to provide software and tech-enabled services for cities, transit agencies, transport operators, school districts, universities, and corporations to manage public transportation. On September 15, 2025, Via conducted its IPO, offering 10,714,285 shares of its common stock to the investing public at a

1

price of $46 per share (the "Offering Price").  Defendants anticipated generating gross proceeds of nearly $493 million from the IPO.

3.      According to the Offering Documents, Via's platform provides "cutting-edge software and technology-enabled services" to government agencies and private organizations "responsible for providing public transportation."  Specifically, Via's solutions "address key workflows for the end-to-end management of transit networks," including "planning and scheduling, operating software, tech-enabled services, passenger tools, and data and insights."

4.      The Offering Documents highlighted that Via's "ability to generate measurable impact to our customers has enabled" the Company "to achieve significant and durable revenue growth."  The Company touted its "rapid growth," which was "showcased" by its Platform Annual Run-Rate Revenue ("ARR").  There was no indication that growth rates would be declining.

5.      The Company also highlighted that "revenues from Europe accounted for 29% and 32% of our total revenues, respectively, a majority of which were earned in Germany." Specifically, for the six months ended June 30, 2025, nearly 20% of Via's total revenue came from Germany, meaning it was integral to the Company's "successful land and expand strategy."

6.      Unbeknownst to Plaintiff and other potential investors, however, Via's growth had already begun to encounter obstacles at the time of the IPO.  As later revealed, Via was adding customers faster than those customers were generating revenue, resulting in a decline in ARR per customer for the first time in eight quarters.  Moreover, Germany was stuck in a regulatory transition where customers had adopted microtransit but Via, as it later revealed, could not actually "sell the entire platform."

7. As these true facts emerged after the Offering, the Company's shares fell sharply. By the commencement of this action, Via's shares traded as low as $14.52, a decline of nearly 70% from the Offering Price.

8. By this action, Plaintiff, on behalf of himself and other members of the Class (defined below) who also acquired Via's shares pursuant and traceable to the Offering, now seeks to obtain a recovery for the damages suffered as a result of Defendants' violations of the Securities Act, alleged herein.

9. The claims asserted herein are purely strict liability and negligence claims. Plaintiff expressly eschews any allegation sounding in fraud.

## II. JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to Sections 11, 12, and 15 of the Securities Act (15 U.S.C. §§77k and 77o).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, Section 22 of the Securities Act (15 U.S.C. §77v).

12. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the acts and transactions giving rise to the violations of law complained of occurred, in part, in this District, certain Defendants reside and/or transact business in this District, and the Company maintains its corporate headquarters in this District. In addition, the Company's common stock is listed on the New York Stock Exchange (the "NYSE"), a national securities exchange. Therefore, the alleged illegal conduct was carried out, in part, in this District.

13. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the U.S. mail, interstate telephone and wire communications, and the facilities of a national securities exchange.

### III.    PARTIES

#### A.    PLAINTIFF

14.    Plaintiff Stephan Garlesky, as set forth in his certification, purchased shares of Via's common stock that were issued pursuant and traceable to the Offering Documents, and was damaged thereby.

#### B.    DEFENDANTS

##### 1.    The Company

15.    Defendant Via Transportation, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business in New York, New York.  Via's stock trades on the NYSE under the ticker symbol "VIA."

##### 2.    The Individual Defendants

16.    Defendant Daniel Ramot ("Ramot") is, and was at all relevant times, the Chief Executive Officer, and a Director (Principal Executive Officer) of Via.  Defendant Ramot reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

17.    Defendant Clara Fain ("Fain") is, and was at all relevant times, the Chief Financial Officer (Principal Financial Officer and Principal Accounting Officer) of Via.  Defendant Fain reviewed, approved, and participated in making statements in the Offering Documents, which she signed.

18.    Defendant Arnon Dinur ("Dinur") is, and was at all relevant times, a Director of Via. Defendant Dinur reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

4

19.     Defendant William Nix ("Nix") is, and was at all relevant times, a Director of Via. Defendant Nix reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

20.     Defendant Noam Ohana ("Ohana") is, and was at all relevant times, a Director of Via. Defendant Ohana reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

21.     Defendant Nechemia Peres ("Peres") is, and was at all relevant times, a Director of Via. Defendant Peres reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

22.     Defendant Charles H. Rivkin ("Rivkin") is, and was at all relevant times, a Director of Via. Defendant Rivkin reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

23.     Defendant Sarah E. Smith ("Smith") is, and was at all relevant times, a Director of Via. Defendant Smith reviewed, approved, and participated in making statements in the Offering Documents, which she signed.

24.     In addition, although not an element of Plaintiff's (or the Class's) claims (and is instead an issue on which each Individual Defendant bears the burden of proof to the extent it seeks to assert it as an affirmative defense), no Individual Defendant conducted an adequate due diligence investigation in connection with the matters alleged herein and will accordingly be unable to establish a statutory "due diligence" affirmative defense under the Securities Act.

### 3.     The Underwriter Defendants

25.     The Underwriter Defendants were also instrumental in soliciting investors and in underwriting the Via shares that were offered and sold in or traceable to the IPO available to Plaintiff and the other members of the Class.

5

26.     Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. Goldman Sachs acted as a representative of all the underwriters. Goldman Sachs also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. Goldman Sachs' participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 3,389,422 shares of Via common stock to investors in the IPO. Defendant Goldman Sachs conducts business in this District.

27.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") was an underwriter of Via's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of Via's materially misleading and incomplete Offering Documents. Morgan Stanley acted as a representative of all the underwriters. Morgan Stanley also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. Morgan Stanley's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 2,824,519 shares of Via common stock to investors in the IPO. Defendant Morgan Stanley conducts business in this District.

28.     Defendant Allen & Company LLC ("Allen & Company") was an underwriter of Via's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of Via's materially misleading and incomplete Offering Documents. Allen & Company acted as a representative of all the underwriters. Allen & Company also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who

6

participated in the roadshow, including lodging and travel, among other expenses.  Allen & Company's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 1,468,749 shares of Via common stock to investors in the IPO. Defendant Allen & Company conducts business in this District.

29.    Defendant Wells Fargo Securities, LLC ("Wells Fargo Securities") was an underwriter of Via's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of Via's materially misleading and incomplete Offering Documents.  Wells Fargo Securities acted as a representative of all the underwriters.  Wells Fargo Securities also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Wells Fargo Securities' participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 1,129,807 shares of Via common stock to investors in the IPO.  Defendant Wells Fargo Securities conducts business in this District.

30.    Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") was an underwriter of Via's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of Via's materially misleading and incomplete Offering Documents.  Deutsche Bank acted as a representative of all the underwriters.  Deutsche Bank also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Deutsche Bank's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 375,000 shares of Via common stock to investors in the IPO. Defendant Deutsche Bank conducts business in this District.

7

31. Defendant Guggenheim Securities, LLC ("Guggenheim Securities") was an underwriter of Via's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of Via's materially misleading and incomplete Offering Documents. Guggenheim Securities acted as a representative of all the underwriters. Guggenheim Securities also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. Guggenheim Securities' participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 321,429 shares of Via common stock to investors in the IPO. Defendant Guggenheim Securities conducts business in this District.

32. Defendant Citizens JMP Securities, LLC ("Citizens JMP") was an underwriter of Via's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of Via's materially misleading and incomplete Offering Documents. Citizens JMP acted as a representative of all the underwriters. Citizens JMP also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. Citizens JMP's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 214,286 shares of Via common stock to investors in the IPO. Defendant Citizens JMP conducts business in this District.

33. Defendant Needham & Company, LLC ("Needham") was an underwriter of Via's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of Via's materially misleading and incomplete Offering Documents. Needham acted as a representative of all the underwriters. Needham also participated in conducting and promoting the roadshow for

8

the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. Needham's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 214,286 shares of Via common stock to investors in the IPO. Defendant Needham conducts business in this District.

34.    Defendant Oppenheimer & Co. Inc. ("Oppenheimer") was an underwriter of Via's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of Via's materially misleading and incomplete Offering Documents.  Oppenheimer acted as a representative of all the underwriters. Oppenheimer also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. Oppenheimer's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 214,286 shares of Via common stock to investors in the IPO. Defendant Oppenheimer conducts business in this District.

35.    Defendant Raymond James & Associates, Inc. ("Raymond James") was an underwriter of Via's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of Via's materially misleading and incomplete Offering Documents.  Raymond James acted as a representative of all the underwriters.  Raymond James also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. Raymond James' participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 214,286 shares of Via common stock to investors in the IPO.  Defendant Raymond James conducts business in this District.

36.   Defendant William Blair & Company, L.L.C. ("William Blair") was an underwriter of Via's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of Via's materially misleading and incomplete Offering Documents.  William Blair acted as a representative of all the underwriters.  William Blair also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  William Blair's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 214,286 shares of Via common stock to investors in the IPO. Defendant William Blair conducts business in this District.

37.   Defendant Nomura Securities International, Inc. ("Nomura") was an underwriter of Via's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of Via's materially misleading and incomplete Offering Documents.  Nomura acted as a representative of all the underwriters.  Nomura also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Nomura's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 127,232 shares of Via common stock to investors in the IPO.  Defendant Nomura conducts business in this District.

38.   Defendant WR Securities, LLC ("WR Securities") was an underwriter of Via's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of Via's materially misleading and incomplete Offering Documents.  WR Securities acted as a representative of all the underwriters.  WR Securities also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who

participated in the roadshow, including lodging and travel, among other expenses. WR Securities' participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold 6,697 shares of Via common stock to investors in the IPO. Defendant WR Securities conducts business in this District.

39.    The Defendants listed above are collectively referred to herein as the "Underwriter Defendants." Pursuant to the Securities Act, each Underwriter Defendant is liable for the materially inaccurate, misleading, and incomplete statements in the Offering Documents. In addition, although not an element of Plaintiff's (or the Class's) claims (and is instead an issue on which each Underwriter Defendant bears the burden of proof to the extent it seeks to assert it as an affirmative defense), no Underwriter Defendant conducted an adequate due diligence investigation in connection with the matters alleged herein and will accordingly be unable to establish a statutory "due diligence" affirmative defense under the Securities Act.

40.    Each Underwriter Defendant named herein is an investment banking firm whose activities include, inter alia, the underwriting of public offerings of securities. As the underwriters of the IPO, the Underwriter Defendants earned $24.6 million in underwriting discounts and commissions.

41.    As underwriters, the Underwriter Defendants met with potential investors in the IPO and presented highly favorable, but materially misleading, information about the Company, its business, products, plans, and financial prospects, and omitted to disclose material information required to be disclosed under the federal securities laws and applicable regulations promulgated thereunder.

42.    Representatives of the Underwriter Defendants assisted Via and the Individual Defendants in planning the IPO and purported to conduct an adequate and reasonable investigation

11

into the business, operations, products, and plans of the Company, an undertaking known as a "due diligence" investigation. During their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning the Company's business, operations, financial condition, products, performance, and prospects.

43.     In addition to having access to internal corporate documents, the Underwriter Defendants and/or their agents, including their counsel, had access to Via's management and directors to determine: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Via's common stock would be sold; (iii) the language to be used in the Offering Documents; (iv) what disclosures about Via would be made in the Offering Documents; and (v) what responses would be made to the SEC in connection with its review of the Offering Documents. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Via's management and directors, the Underwriter Defendants were aware of, or at a minimum should have known of, Via's undisclosed issues, and of the Offering Document's materially misleading and incomplete statements and omissions as alleged herein.

44.     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the IPO so that they, and the Individual Defendants, could offer to sell (and did in fact sell) the Via shares registered thereby to members of the Class pursuant to the Offering Documents.

## IV.    SUBSTANTIVE ALLEGATIONS

45.     On April 15, 2025, Via filed with the SEC a draft registration statement on Form S-1, which would be used for the following IPO following a series of amendments in response to SEC comments. On September 3, 2025, Via filed its final amendment to the Registration Statement, which registered 10,714,285 Via shares for public sales. The SEC declared the

12

Registration Statement effective on September 11, 2025.  On September 15, 2025, Defendants priced the IPO at $46 per share and filed the final Prospectus for the IPO, which forms part of the Registration Statement.

46.    The Offering Documents were negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation.

47.    Via is headquartered in New York, New York.  The Company claims to provide software and tech-enabled services for cities, transit agencies, transport operators, school districts, universities, and corporations to manage public transportation.  According to the Offering Documents, the Company's "vertically integrated platform is designed to comprehensively address key workflows for the end-to-end management of transit networks.  This includes planning and scheduling, operating software, tech-enabled services, passenger tools, and data and insights."

48.    The Offering Documents highlighted that Via's "ability to generate measurable impact to our customers has enabled" the Company "to achieve significant and durable revenue growth."  Via touted its "rapid growth," which was "showcased" by its Platform Annual Run-Rate Revenue.

49.    In the Offering Documents, Via touted its "customers often start their journey with Via by subscribing to a single solution, typically our planning or microtransit solution.  As our customers adopt more of our platform's products and features, they experience flywheel effects from their use of the platform and the efficiencies gained throughout their transit network and improved quality of service for passengers, generating the opportunity to allow for further growth and expansion."

50. The Offering Documents further stated that "[w]hile we initially focus on acquiring new customers with one solution (most often planning or microtransit), we rapidly work to grow our relationships with our customers by expanding the scale of our contracts (through volume usage), upselling to new solutions or transportation verticals (such as paratransit, scheduling, or school transport), and introducing new modules (such as tech-enabled services, passenger apps, service design consulting, or data and insights)."

51. The Offering Documents further declared that Via's "successful land and expand strategy" was "driven by a combination of volume growth and cross-sell."

52. The Offering Documents also disclosed that "revenues from Europe accounted for 29% and 32% of our total revenues, respectively, a majority of which were earned in Germany." Specifically, in the six months ended June 30, 2025, almost 20% of Via's overall revenue was from Germany.

53. The Offering Documents, however, were false and misleading and omitted to state the Company's ARR per customer was declining and that existing regulatory issues would hinder its "land and expand" strategy in Germany.

## V.    FALSE AND MISLEADING STATEMENTS AND OMISSIONS

54. On September 15, 2025, Via filed its Prospectus with the SEC. The Prospectus stated that "[o]ur ability to generate measurable impact to our customers has enabled our business to achieve significant and durable revenue growth."

55. The Prospectus stated, under "Risk Factors," that "[a]broad, we have several contracts in Germany which, if the German government or the agencies or entities with which we contract with took similar budgetary constraining measures, *could* negatively impact our business, financial condition, and results of operations."

14

56.     "*If* we are unable to manage the risks presented by our international operations, our business, financial condition, and results of operations may be adversely impacted . . . Conducting our business internationally, particularly in countries in which we have limited experience, subjects us to risks that we do not face to the same degree in the United States.  These risks include . . . laws and regulations more restrictive than those in the United States, including laws governing competition, pricing, payment methods, Internet activities, transportation services (such as taxis, buses, and vehicles for hire), TNC laws, motor carrier laws or their equivalent, payment processing and payment gateways, taxes and social security laws, employment and labor laws, driver screening and background checks, licensing regulations, email messaging, privacy, location services, collection, use, processing or sharing of personal information, ownership of intellectual property, and other activities important to our business."

57.     Defendants were required to disclose this material information in the Offering Documents for at least three independent reasons.  First, SEC Regulation S-K, 17 C.F.R. §229.303 (Item 303), required disclosure of any known events or uncertainties that at the time of the Offering had caused, or were reasonably likely to cause, Via's disclosed financial information not to be indicative of future operating results.  At the time of the Offering, Via possessed information showing that its ARR per customer was declining.  These undisclosed negative events and trends were likely to (and in fact, did) materially and adversely affect Via's financial state and rendered the disclosed results and trends in the Offering Documents misleading and not indicative of the Company's future operating results.

58.     Second, SEC Regulation S-K, 17 C.F.R. §229.105 (Item 105), required, in the "Risk Factor" section of the Offering Documents, a discussion of the most significant factors that make the offering risky or speculative, and that each risk factor adequately describes the risk.

15

Via's discussion of risk factors did not adequately warn potential investors about the already occurring negative results and trends the Company was observing in the decline of Via's ARR per customer.

59.     Third, Defendants' failure to disclose the aforementioned material information rendered false and misleading the Offering Documents' many references to known risks that "may" affect the Company.

## VI.    THE TRUTH EMERGES

60.     On November 13, 2025, Via filed an 8-K with the SEC to report its earnings for 3Q 2025.  The Company also filed a 10-Q on November 14, 2025.

61.     The Company held an earnings call on November 13, 2025.  On the earnings call, Defendant Fain announced that the ARR per customer declined for the first time in eight quarters. She stated that the "platform ARR per customer did decline slightly quarter-over-quarter in Q3 versus Q4, some 1%.  And that's generally driven by, one, normal seasonality patterns of our existing contracts.  In Q3, we tend to have universities, schools, corporate contracts, that have lower volumes during the summer.  So that seasonal -- that slight seasonality drives lower ARR per customer in Q3.  And then the growth in our schools business, where we saw a significant increase in the number of customers and the schools product is relatively new.  These customers launched their services in Q3, coinciding with the start of the academic year and, therefore, contributed to more limited revenue in that quarter.  So that drove the slight decline in ARR per customer."

62.     On this news, Via's stock dropped almost 13% to close at $43.14 per share on November 13, 2025.

63.     On February 27, 2026, Via filed an 8-K with the SEC to report its earnings for 4Q 2025 and FY2025.  The Company also filed a 10-K on March 6, 2026.

16

64. The Company held an earnings call on February 27, 2026. On the earnings call, Defendant Ramot announced that Via was "facing some headwinds . . . in Germany." He stated that "In Germany, we were very successful in introducing microtransit. That next phase where adoption of our entire platform is becoming ubiquitous from a change perspective, a regulatory perspective, with the European structure is just proving to take longer than we would have liked, certainly and longer than it took in the U.S. So in Germany, we're just at this interim phase. We're still selling microtransit. We're trying to get to that next level of being able to sell the entire platform. And that really requires -- for that to happen, it requires our customers to change their network to reduce certain fixed routes, replace them with microtransit, combine services that have previously been siloed. That is just -- with the regulatory environment in Europe, it is just proving to be a longer process."

65. On this news, Via's stock dropped nearly 8% to close at $17.18 per share on February 27, 2026.

66. On May 12, 2026, Via filed an 8-K with the SEC to report its earnings for 1Q 2026. The Company also filed a 10-Q on the same day.

67. The Company held an earnings call on May 12, 2026. On the earnings call, Defendant Fain stated that, "At the same time, we continue to face headwinds in Germany as our customers continue to navigate a sustained constrained budgetary environment. These results reinforce the benefits of our geographical diversification strategy."

68. Later in the earnings call, an analyst asked if the Company could "talk a little bit more about what's going on in Germany?" Defendant Ramot responded that:

> Germany is, for us, obviously presenting some real headwinds as you guys are seeing. Despite the headwinds, I think we've had really nice results this quarter and are -- continue to be very positive about the year overall. Germany, we're facing some headwinds that are unusual. So it is an unusual market for our

17

perspective. It is an area where we have not yet been able to move past microtransit being adopted in a silo. So I think we've talked a lot on this call and in the past about the importance for us of deploying the entire platform. In the U.S., we started obviously microtransit then added paratransit. Now we're adding sort of these full network opportunities.

And that is really key both to our growth and frankly, to the stickiness of the platform. As we add more and more of these services, it becomes very challenging to make any changes that don't involve working together with us. And then oftentimes, these changes actually present an opportunity. In Germany, we have not yet been able to crack it beyond the microtransit vertical. We do sell planning and scheduling and other software, but the majority of our revenue still comes from microtransit. And unfortunately, the agencies they are still treating microtransit as in a silo as a separate service. We believe pretty strongly that Germany in that sense is very much behind other parts of the world, we're not seeing that in the U.K. Obviously, the U.S. we've talked about, Canada, the dynamics are much more moving towards integration and for us an opportunity to deploy our whole platform.

That then coupled with the just the headwinds or macro headwinds, if you will, around funding that exists in Germany across the entire country combined to create some real pressure on our services and limit our growth there. We're pretty confident that this is a temporary situation that we will be able -- the strength of our product and our solution will allow us to move beyond that and embed our other products in the market as well and the dynamic will change, but it is taking longer than it has been in other markets. So that's sort of this unusual dynamic in Germany. The funding, coupled with the fact that our services are focused in a silo.

69.    On this news, Via's stock dropped over 17% to close at $14.12 per share on May 12, 2026, or nearly 70% below the $46 IPO Offering Price.

## VII.   CLASS ACTION ALLEGATIONS

70.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

71.    Plaintiff brings this action as a class action, pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class consisting of all persons and entities that purchased, or otherwise acquired, Via's common stock issued in connection with the Company's IPO.

18

72.     Excluded from the Class are: (i) Defendants; (ii) present or former executive officers of Via, members of the Via's Board, and members of their immediate families (as defined in 17 C.F.R. §229.404, Instructions (1)(a)(iii) and (1)(b)(ii)); (iii) any of the foregoing persons' legal representatives, heirs, successors, or assigns; and (iv) any entities in which Defendants have or had a controlling interest, or any affiliate of Via.

73.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, millions of Via's securities traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Via or its transfer agent, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

74.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.  Further, Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

75.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

> a.     whether the federal securities laws were violated by Defendants' actions as alleged herein;

19

b.      whether statements made by Defendants to the investing public misrepresented material facts about the business, operations, and prospects of Via;

c.      whether statements made by Defendants to the investing public omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

d.      the extent of damage sustained by Class members and the appropriate measure of damages.

76.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**FIRST CLAIM**
**Violation of Section 11 of the Securities Act**
**Against All Defendants**

77.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

78.    This claim is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.  This is a non-fraud cause of action.  Plaintiff does not assert that Defendants committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.

79.    The Offering Documents were inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

80.     The Company is the registrant of the securities purchased by Plaintiff and the Class. As such, the Company is strictly liable for the materially inaccurate statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate.  By virtue of the Offering Documents containing material misrepresentations and omissions of material fact necessary to make the statements therein not false and misleading, Via is liable under §11 of the Securities Act to Plaintiff and the Class.

81.     The Individual Defendants each signed the Offering Documents and caused their issuance.  As such, each is strictly liable for the materially inaccurate statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense.  The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Offering Documents and ensure that they were true and accurate, there were no omissions of material facts that would make the Offering Documents misleading, and the documents contained all facts required to be stated therein.  In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the Offering Documents and also should have known of the omissions of material fact necessary to make the statements made therein not misleading.  Accordingly, the Individual Defendants are liable to Plaintiff and the Class.

82.     The Underwriter Defendants each served as underwriters in connection with the IPO.  As such, each is strictly liable for the materially inaccurate statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense.  The Underwriter Defendants each had a duty to make a reasonable and diligent investigation of the

21

truthfulness and accuracy of the statements contained in the Offering Documents.  They had a duty to ensure that such statements were true and accurate, there were no omissions of material facts that would make the Offering Documents misleading, and the documents contained all facts required to be stated therein.  In the exercise of reasonable care, the Underwriter Defendants should have known of the material misstatements and omissions contained in the Offering Documents and also should have known of the omissions of material facts necessary to make the statements made therein not misleading.  Accordingly, each of the Underwriter Defendants is liable to Plaintiff and the Class.

83.     Defendants acted negligently in preparing the Offering Documents.  None of the Defendants named in this Claim made a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omission of any material facts and were not misleading.  In alleging the foregoing, Plaintiff specifically disclaims any allegation of fraud.

84.     By reasons of the conduct herein alleged, each Defendant named in this claim violated §11 of the Securities Act.  None of the untrue statements or omissions of material fact in the Offering Documents alleged herein was a forward-looking statement.  Rather, each such statement concerned existing facts.  Moreover, the Offering Documents did not properly identify any of the untrue statements as forward-looking statements and did not disclose information that undermined the putative validity of these statements.

85.     Plaintiff acquired the Company's securities pursuant or traceable to the Offering Documents and without knowledge of the untruths and/or omissions alleged herein.  Plaintiff sustained damages, and the price of the Company's shares declined substantially due to material misstatements in the Offering Documents.  This Claim is brought within one year after the

22

discovery of the untrue statements and omissions and within three years of the date of the Offering. By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under §11, as measured by the provisions of §11(e), from the Defendants and each of them, jointly and severally.

**SECOND CLAIM**
**Violation of Section 12(a) of the Securities Act**
**Against All Defendants**

86.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

87.     By means of the defective Offering Documents, Defendants promoted, solicited, and sold Via shares to Plaintiff and other members of the Class.

88.     The Offering Documents for the IPO contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above.  Defendants owed Plaintiff, and the other members of the Class who purchased Via shares pursuant to the Offering Documents, the duty to make a reasonable and diligent investigation of the statements contained in the Offering Documents, to ensure that such statements were true and that there was no omission to state a material fact required to be stated, in order to make the statements contained therein not misleading.  Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Offering Documents, as set forth above.

89.     Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the Offering Documents at the time Plaintiff acquired Via shares.

90.     By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2).  As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased Via securities, pursuant to the Offering

23

Documents, sustained substantial damages in connection with their purchases of the shares. Accordingly, Plaintiff and the other members of the Class who hold Via securities issued pursuant to the Offering Documents have the right to rescind and recover the consideration paid for their shares, and hereby tender their Via shares to Defendants sued herein.  Class members who have sold their Via securities seek damages to the extent permitted by law.

**THIRD CLAIM**
**Violation of Section 15(a) of the Securities Act**
**Against Individual Defendants**

91.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

92.    This claim is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o, on behalf of the Class, against each of the Individual Defendants.

93.    The Individual Defendants were controlling persons of the Company within the meaning of §15 of the Securities Act.  By reason of their ownership interest in, senior management positions at, and/or directorships held at the Company, as alleged above, these Defendants invested in, individually and collectively, and had the power to influence, and exercised the same over, the Company to cause it to engage in the conduct complained of herein.  Similarly, each of the other Individual Defendants not only controlled those subject to liability as primary violators of §11 of the Securities Act, as alleged above, he or she directly participated in controlling Via by having signed, or authorized the signing of, the Offering Documents and authorizing the issuance of Via securities to Plaintiff and members of the Class.

94.    As control persons of Via, each of the Individual Defendants is jointly and severally liable pursuant to §15 of the Securities Act with and to the same extent as Via for its violations of §11 of the Securities Act.

24

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the other members of the Class rescission on their §12(a)(2) claims;

D.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.     Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED:  June 9, 2026                    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

                                        */s/ Thomas L. Laughlin, IV*
                                        Thomas L. Laughlin, IV
                                        Matthew A. Peller
                                        Mandeep S. Minhas
                                        The Helmsley Building
                                        230 Park Avenue, 24th Floor
                                        New York, NY 10169
                                        Telephone: (212) 223-6444
                                        Facsimile:  (212) 223-6334
                                        tlaughlin@scott-scott.com
                                        mpeller@scott-scott.com
                                        mminhas@scott-scott.com

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, Stephan Garlesky, hereby certify that the following is true and correct to the best of my knowledge, information, and belief:

1.      I have reviewed a complaint against Via Transportation, Inc. ("Via" or the "Company") and authorize Scott+Scott Attorneys at Law LLP to file a comparable complaint on my behalf.

2.      I am willing to serve as a representative party on behalf of all persons and entities that purchased, or otherwise acquired, Via common stock pursuant and/or traceable to the Company's public offering held on or about September 12, 2025, including providing testimony at deposition and trial if necessary.

3.      During the relevant period, I purchased and/or sold the security that is the subject of the complaint, as set forth in the attached Schedule A.

4.      I did not engage in the foregoing transactions at the direction of counsel nor in order to participate in any private action arising under the Securities Act of 1933 (the "Securities Act") or the Securities Exchange Act of 1934 (the "Exchange Act").

5.      During the three-year period preceding the date of my signing this Certification, I have not sought to serve, or served, as a representative party or lead plaintiff on behalf of a class in any private action arising under the Securities Act or the Exchange Act.

6.      I will not accept any payment for serving as a representative party on behalf of the Class beyond the *pro rata* share of any recovery, except for such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

1

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 09, 2026.

Signed by:

Stephan Garlesky

# Schedule A

**VIA TRANSPORTATION INC-CL A**　　　　　　　　　　**Ticker:**　**VIA**　　**Cusip:**　　**92556W104**

**Stephan Garlesky**

| | DATE | SHARES | PRICE |
|---|---|---|---|
| **Purchases:** | 9/15/2025 | 1 | $46.00 |
| | 1/2/2026 | 2 | $54.95 |